TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-00-00028-CR







Robert Edward Rogers, Appellant



v.



The State of Texas, Appellee






FROM THE DISTRICT COURT OF HARRIS COUNTY, 177TH JUDICIAL DISTRICT


NO. 811,816, HONORABLE CAROL G. DAVIES, JUDGE PRESIDING






 Appellant Robert Edward Rogers was convicted by a jury of the offense of indecency
with a child by contact. See Tex. Penal Code Ann. § 21.11 (West Supp. 2001). The jury assessed
his punishment at nine years' imprisonment and a $10,000 fine. On appeal, Rogers contends he did
not receive effective assistance of counsel; the district court improperly admitted evidence of
extraneous offenses; and the evidence was legally and factually insufficient to support the
conviction. We will overrule these contentions and affirm the conviction.


BACKGROUND


 In 1990, Christiane Ramos (Ramos), the mother of the complainant, C.A.H., divorced
C.A.H.'s biological father and traveled to Philadelphia to find appellant. Appellant is the biological
father of Ramos's oldest daughter, Marie Christine Jackson (Jackson). Appellant had never met
Jackson and had not seen Ramos in twenty-nine years. (1) In early 1991, shortly after their meeting,
appellant returned to Texas with Ramos, whom he married, and moved in with her and C.A.H., who
was ten at the time. He remained at Ramos's home until about 1993 when he and Ramos divorced. 

 According to the testimony at trial, after residing with C.A.H. and Ramos for about
a year, appellant began engaging in intimate conversations with the then eleven-year-old C.A.H.,
such as describing the male and female anatomy and oral sex. He also told her that he and his
biological daughter from a previous marriage engaged in sexual activity when she was about the
same age as C.A.H., that some countries allow family members to experiment with each other, that
shoving a banana down her throat would make a sore throat go away, and asked her if she would
perform oral sex on her mother. Appellant often summoned C.A.H. into a room where he was
watching pornographic movies. During that period of time, appellant fondled C.A.H.'s breasts, gave
her enemas, encouraged her to masturbate, and sometimes after physically holding her down or tying
her up, he would place a vibrator on her genitals. C.A.H. testified that on one occasion, she came
home from school and found appellant standing on the stairs under a sheet. When she tried to walk
by, he grabbed her, carried her into a bedroom, threw her onto the bed, tried to remove her jeans and
stick his tongue in her mouth until C.A.H. yelled, "Rape!" 

 C.A.H. first told her mother about appellant's conduct when she was a sophomore
in high school and studying in France from August 1995 through July 1996. C.A.H. began seeing
a therapist in 1999 and reported appellant's conduct to the police shortly afterwards. 

 At trial, the State offered the testimony of C.A.H. and City of Houston Police Officer
Kendall Clark, who investigated C.A.H.'s allegations. Appellant testified in his own defense and
presented testimony from Mary Rogers, his wife at the time of the trial, and his two sons, Brynell
Wallace and Robert Rogers. The State presented three rebuttal witnesses, Jackson, Ramos, and
Jeanine Rogers (Jeanine), appellant's daughter from a previous marriage. Jackson testified that on
several occasions after appellant married Ramos, he touched Jackson inappropriately and attempted
to kiss her. On one occasion, appellant told Jackson that tribes in other countries permitted sex with
children. Similarly, Jeanine testified that when she was about eight years old, her father climbed into
bed with her one night and touched her vagina; when she was ten or eleven years old, appellant
touched her breasts. He also told her that sex with animals was acceptable and that the Bible allowed
a man to marry several women and even children. Appellant testified again during his rebuttal, but
offered no other witnesses.


DISCUSSION


Ineffective Assistance of Counsel

 Following the conclusion of the trial, appellant filed a motion for new trial on the
grounds of ineffective assistance of counsel. At the hearing on appellant's motion, the district court
heard testimony from both the appellant and his trial counsel, Lloyd Oliver (Oliver). The court
denied appellant's motion for new trial, and appellant now claims the district court erred in its ruling.

 The United States and Texas Constitutions guarantee the right to counsel at trial. U.S.
Const. amend. VI; Tex. Const. art. I, § 10. This right has been interpreted as a right to reasonably
effective counsel. Strickland v. Washington, 466 U.S. 668, 686 (1984); Hernandez v. State, 726
S.W.2d 53, 55-56 (Tex. Crim. App. 1986). Texas has adopted the federal standard for reviewing
claims of ineffective assistance of counsel. Hernandez, 726 S.W.2d at 57. This standard, as
articulated in Strickland, requires that we apply a two-pronged test: the appellant must show that
(1) his trial counsel's performance was deficient, in that counsel made such serious errors that he was
not functioning effectively as the "counsel" guaranteed by the Sixth Amendment, and (2) the
deficient performance prejudiced the defense to such a degree that the defendant was deprived of a
fair trial. Strickland, 466 U.S. at 687. 

 To satisfy the first prong of the test, an appellant must demonstrate that counsel's
performance was unreasonable under prevailing professional norms and that the challenged action
was not sound trial strategy. Id. at 690; Stafford v. State, 813 S.W.2d 503, 506 (Tex. Crim. App.
1991). Trial strategy will be deemed inadequate representation only if counsel's actions are without
any plausible basis. Jackson v. State, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994); Ex parte Ewing,
570 S.W.2d 941, 945 (Tex. Crim. App. 1978). The second prong of the Strickland test requires an
appellant to demonstrate that counsel's deficient performance prejudiced the defense, thereby
depriving the defendant of a fair trial; that is, there is a reasonable probability that but for counsel's
deficient performance, the result of the proceedings would have been different. Strickland, 466 U.S.
at 694; Jackson, 877 S.W.2d at 771.

 A party claiming ineffective assistance of counsel has the burden of proving his claim
by a preponderance of the evidence. McFarland v. State, 928 S.W.2d 482, 500 (Tex. Crim. App.
1996). Review of counsel's representation is highly deferential, and courts indulge a strong
presumption that trial counsel's actions fall within a wide range of reasonable representation and
might be considered sound trial strategy. Strickland, 466 U.S. at 689; McFarland, 928 S.W.2d at
500. Counsel's performance is not evaluated in hindsight but rather from counsel's perspective at
the time of trial. Strickland, 466 U.S. at 689; Ex parte Kunkle, 852 S.W.2d 499, 505 (Tex. Crim.
App. 1993). We consider the totality of counsel's representation in considering an ineffective-assistance claim; the claim cannot be established by isolating one portion of counsel's representation. 
Wilkerson v. State, 726 S.W.2d 542, 548 (Tex. Crim. App. 1986). 

 We review a district court's order denying a motion for new trial through the prism
of an abuse of discretion standard. State v. Gill, 967 S.W.2d 540, 542 (Tex. App.--Austin 1998, pet.
ref'd). Thus, we examine whether the district court's application of the Strickland test and denial
of the motion for new trial was so outside the zone of reasonable disagreement that it is subject to
reversal. Cantu v. State, 842 S.W.2d 667, 682 (Tex. Crim. App. 1992). 

 Appellant points to a variety of trial counsel's tactics in support of his ineffective-assistance claim, the first of which is Oliver's failure to file a pretrial Brady motion (2)
 for exculpatory
evidence and failure to file any pretrial motions, such as a motion in limine, regarding extraneous
offenses. He further complains that by failing to file a request for notice of extraneous offenses, (3)
trial counsel sacrificed the opportunity to prevent a witness, Jackson, from testifying even though
the State's Notice of Intent to Use Evidence of Extraneous Offenses fails to mention her. See Tex.
R. Evid. 404(b). 

 Trial counsel's failure to file appropriate pretrial motions is not categorically deemed
ineffective assistance. Miranda v. State, 993 S.W.2d 323, 327 (Tex. App.--Austin 1999, no pet.). 
Appellant must identify the basis in the record for the motions and how the motions would have
benefitted appellant if they were filed. Ryan v. State, 937 S.W.2d 93, 104 (Tex. App.--Beaumont
1996, pet. ref'd). The record does not reveal trial counsel's strategy regarding his decision not to file
pretrial motions. See Thompson v. State, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999). During the
motion-for-new-trial hearing Oliver could not recall why he had not filed pretrial motions, and he
did not have his file with him to refresh his memory. 

 With regard to a Brady motion, the clerk's record includes a "Discovery Order,"
requiring the State "[t]o inform defense counsel of: . . . All exculpatory evidence pursuant to Brady
v. Maryland and related cases." Thus, the district court had already ordered the State to turn over
any exculpatory evidence, and Oliver may have believed a Brady motion was unnecessary. 
Moreover, during a pretrial hearing the day before the trial, Oliver informed the district court that
the State's attorney had "made his file open until today. Frankly, I've had ample opportunity to see
the State's file."

 Assuming Oliver failed to file a motion in limine, (4) appellant did not satisfy the second
prong of the Strickland test; that is, the record does not reflect that appellant was prejudiced and the
outcome of the trial was unreliable as a result of this alleged omission. A traditional motion in
limine is a motion requesting that the opposing party be directed to approach the trial court before
offering specified types of evidence, asking certain questions, or otherwise going into particular areas
before the jury. Harnett v. State, 38 S.W.3d 650, 655 (Tex. App.--Austin 2000, pet. ref'd). During
the pretrial hearing, Oliver objected to evidence of extraneous offenses. Although the district court
overruled the objection, she instructed the State's attorney not to "go into any extraneous matters
without first approaching [the bench]." Moreover, before the State was allowed to present evidence
of extraneous offenses on rebuttal through the testimony of Jackson and Jeanine, the district court
entertained arguments from both parties regarding the admissibility of the extraneous-offense
evidence. Thus, it appears even if Oliver failed to file a motion in limine, the district court
nevertheless dealt with the extraneous-offense evidence as though a motion in limine had been
granted. 

 Similarly, any prejudice appellant may have experienced due to Oliver's failure to file
a request for notice of extraneous offenses is negligible since Jackson's testimony was admitted as
rebuttal evidence. The State would not have been obligated to include rebuttal witnesses, such as
Jackson, in its notice of extraneous offenses. See Hoagland v. State, 494 S.W.2d 186, 189 (Tex.
Crim. App. 1973) ("To require the State to anticipate any possible defense of an accused and to
furnish names of all possible witnesses and have the court refuse to permit them to testify if their
names were not listed would be to require an impractical and undue burden."); Creekmore v. State,
860 S.W.2d 880, 892 (Tex. App.--San Antonio 1993, pet. ref'd) (holding that evidence of
extraneous offenses may be admissible when door is opened by direct defense testimony or to rebut
defensive theory). Furthermore, the district court signed a discovery order mandating the State to
furnish to defense counsel "[n]otice of all extraneous offenses, with date, time and place, which may
be admissible against defendant." (5) While Jackson's name and the content of her testimony were not
included in the State's notice, during the hearing on the motion for new trial, Oliver testified that he
was aware of the witness and her anticipated testimony, including the extraneous offenses. (6) Thus,
appellant was not prejudiced by the State's failure to provide notice of its intent to call Jackson as
a rebuttal witness. 

 Next appellant argues that Oliver failed to adequately prepare for trial by failing to
procure witnesses. Trial counsel is not necessarily ineffective for failure to call every witness
requested by the defendant. Tutt v. State, 940 S.W.2d 114, 121 (Tex. App.--Tyler 1996, pet. ref'd). 
The failure to call witnesses at the guilt/innocence stage of a trial is irrelevant to a claim of
ineffective assistance of counsel absent a showing that the witnesses were available and the
defendant would have benefitted from the presentation of their testimony. Id. (citing King v. State,
649 S.W.2d 42, 44 (Tex. Crim. App. 1983)); O'Hara v. State, 837 S.W.2d 139, 144 (Tex.
App.--Austin 1992, pet. ref'd). 

 Appellant alleges Oliver should have subpoenaed appellant's sister from Philadelphia,
Mildred McIntire, and his niece from Detroit, Robin Holden. Appellant fails to demonstrate
whether the witnesses were available to testify, what evidence the witnesses would have provided
if they had testified, and how their testimony would have affected the outcome of the trial.

 Appellant also complains about Oliver's failure to produce appellant's two sons,
Brynell Wallace (Wallace) and Robert Rogers (Robert), as rebuttal witnesses in his defense. Both
Wallace and Robert testified on behalf of appellant during his direct defense. On direct examination,
Wallace testified that he lived with appellant in Ramos's house during the summer of 1992 and he
rarely witnessed appellant alone in the house with C.A.H. He also testified that he had never seen
appellant conduct himself inappropriately around C.A.H. or any of his other sisters or stepsisters,
including Jeanine. When questioned about Ramos, Wallace stated that she was always intoxicated
and often left sexually explicit objects lying around the house, such as nude photos of herself, chains,
whips, and pornographic videos. Robert provided similar testimony on behalf of the appellant. He
never witnessed appellant act inappropriately around C.A.H., and testified that C.A.H. thought
fondly of appellant. He too testified that Ramos was always drunk and often left sexually explicit
materials in plain view, such as pornographic videos and magazines. 

 After the defense rested, the State called three rebuttal witnesses, Jackson, Ramos,
and Jeanine. As described above, Jackson and Jeanine recounted several incidents in which
appellant touched each of the women inappropriately or engaged in inappropriate conversations with
them. Ramos testified generally about the nature of her relationship with appellant and related her
conversation with C.A.H. in which C.A.H. first informed her of appellant's criminal behavior.

 Following the State's rebuttal, neither of the two sons was present in the courtroom. (7) 
Appellant was the only witness to testify during his rebuttal. However, both Wallace and Robert had
already provided testimony controverting the rebuttal evidence provided by the State. Appellant fails
to demonstrate what additional evidence his two sons would have provided if they had testified on
rebuttal or how their testimony would have affected the outcome of the trial. 

 Appellant also complains that trial counsel failed to make proper objections at trial. 
Specifically, appellant complains that Oliver should have objected when Jeanine proclaimed, "The
world has gained a pedophile," referring to appellant. Appellant fails to identify the specific
objection that should have been made or to provide authority in support of his argument that the
objection would have been meritorious. See Valdes-Fuerte v. State, 892 S.W.2d 103, 112 (Tex.
App.--San Antonio 1994, no pet.). 

 Assuming that an objection would have been sustained, appellant has also failed to
demonstrate that Oliver's failure to object was not a plausible trial strategy. During the motion-for-new-trial hearing, Oliver could not recall the precise statement that appellant finds objectionable nor
his reasons for choosing not to object. However, the record does not demonstrate that Oliver was
devoid of any strategy nor does it reflect that Oliver employed a strategy that rendered his assistance
ineffective. A decision not to object to inadmissible testimony can constitute a sound and plausible
trial strategy. Indeed, Oliver may have chosen not to object because jurors are often offended by
objections. Moreover, a review of Jeanine's testimony reveals that she was a hostile witness. Oliver
may have decided to forego his objections and preservation of error in favor of attempting to gain
sympathy with the jury. In any event, Jeanine's statement did not inject new evidence; her epithet
was a reflection of her opinion of appellant. The jury had already heard evidence that appellant had
touched Jeanine inappropriately when she was a child, and it was within Oliver's discretion to
determine whether to highlight the evidence by objecting to the epithet, or to try to minimize the
attention paid to such statements. Cf. Darby v. State, 922 S.W.2d 614, 625-26 (Tex. App.--Fort
Worth 1996, pet. ref'd).

 Appellant next contends that Oliver opened the door to the introduction of extraneous
offenses by asking appellant to explain why he thought C.A.H. was lying. Appellant argues that if
Oliver had limited his defense to a simple denial of the charges, the door would not have been
opened to the admission of the extraneous-offense evidence. It appears from the record that Oliver
characterized this case as one of her word against his. In order to convince the jury he should be
believed rather than C.A.H., appellant had to provide a motive for C.A.H. to lie. His defensive
theory appears to have been that C.A.H. fabricated the allegations against appellant at the behest of
C.A.H.'s controlling, domineering, and manipulative mother and that appellant actually attempted
to shield C.A.H. from her mother's "deviant" behavior. Considering the facts and circumstances of
this case, the theory seems plausible. A defensive theory and the manner in which it is presented are
matters of trial strategy, and trial strategy is often accompanied by some amount of risk. While
Oliver's strategy could be questioned in light of the extraneous-offense evidence that was admitted
in rebuttal, trial counsel's strategy is not evaluated in hindsight, but from counsel's perspective at
the time of trial. Appellant fails to show that Oliver's representation was unreasonable under
prevailing professional norms. See Strickland, 466 U.S. at 688-89. 

 Next, appellant argues that a conflict of interest was created between himself and
Oliver when the following exchange occurred between the prosecutor and appellant:

 [Prosecutor] Q. Isn't it true that you have given [C.A.H.] an enema
before?


 [Appellant] A. Yes, sir.


 Q. So what you told this jury about not giving [C.A.H.] an enema,
that was a lie yesterday?


 A. My attorney told me not to say it to the jury, so I didn't.


 Q. Your attorney told you, "Don't tell about the enemas," right?


 A. Yes, sir.


 Following this exchange, Oliver attempted to elicit testimony from appellant
clarifying that Oliver had only advised appellant not to volunteer any information but had never
suggested that he lie. Appellant claims that this line of questioning amounted to a conflict of interest
because Oliver became more concerned about defending himself against allegations of unethical
conduct rather than defending appellant. 

 The Sixth Amendment assures the right to conflict-free representation by counsel. 
Glasser v. United States, 315 U.S. 60, 69-70 (1942); Gray v. Estelle, 616 F.2d 801, 803 (5th Cir.
1980); Ex parte McCormick, 645 S.W.2d 801, 806 (Tex. Crim. App. 1983). However, this right can
be waived. United States v. Greigg, 967 F.2d 1018, 1021 (5th Cir. 1992); United States v. Howton,
688 F.2d 272, 274 (5th Cir. 1982). A valid waiver must be done knowingly, intelligently, and
voluntarily. Greigg, 967 F.2d at 1021; United States v. Garcia, 517 F.2d 272, 277-78 (5th Cir.
1975). If an attorney perceives that an actual conflict of interest has developed, he has an affirmative
duty to advise the court of the conflict, who may then inquire into the nature of the conflict. Simons
v. State, 805 S.W.2d 519, 521 (Tex. App.--Waco 1991, no pet.) (citing Holloway v. Arkansas, 435
U.S. 475, 485-88 (1978); White v. Reiter, 640 S.W.2d 586, 597 (Tex. Crim. App. 1982)). If the trial
court determines that an actual conflict of interest exists, the defendant should be made aware of the
conflict, the potential hazards to his defense by continuing with such counsel, and his right to obtain
other counsel. Greigg, 967 F.2d at 1022 (citing United States v. Casiano, 929 F.2d 1046, 1052 (5th
Cir. 1991); Garcia, 517 F.2d at 277-78). 

 If the defendant demonstrates that he did not effectively waive his right to conflict-free counsel, he must then show that the conflict adversely affected his counsel's representation. 
Cuyler v. Sullivan, 446 U.S. 335, 348 (1980). Once an actual conflict is shown to have adversely
affected counsel's performance, a limited presumption of prejudice is warranted; a showing of
prejudice is a necessary element to an ineffective assistance of counsel claim. Id. at 349-50.

 We are not convinced that an actual conflict of interest existed in this case. The only
evidence of attorney misconduct heard by the district court was appellant's own testimony in which
he stated that Oliver had instructed him to lie. He later recanted this statement and agreed that Oliver
had not encouraged him to lie, but rather had instructed him not to volunteer any information. The
district court never admonished, threatened, or even warned Oliver that if appellant's testimony were
true and Oliver had instructed him to lie, he could be facing some form of sanctions. Cf. Greigg, 967
F.2d at 1021-23. Indeed, even the State's attorney appeared to disbelieve appellant's testimony
regarding whether Oliver encouraged appellant to perjure himself. There is no evidence that Oliver
was struggling to defend both himself and appellant. Cf. id. at 1022.

 Even if we were to agree that an actual conflict existed, however, appellant has failed
to establish that the conflict adversely affected his counsel's performance. Appellant directs us to
Oliver's questioning of subsequent witnesses about whether he ever instructed them to lie. Oliver
also attempted to elicit testimony from witnesses for the State regarding whether the State's attorney
instructed them not to volunteer any information that is not requested. Appellant characterizes this
line of questioning as an attempt by Oliver to defend himself against any allegations of unethical
conduct. However, Oliver had no reason to do so, as there was no indication that appellant's
allegations might result in sanctions against Oliver. Rather, it appears that Oliver was attempting
to explain the misunderstanding between himself and appellant in an effort to rehabilitate his own
credibility before the jury. Because appellant had already compromised his veracity by admitting
to lying while under oath, Oliver's credibility became even more crucial since he would be arguing
appellant's case to the jury. Although appellant may argue that a better tactic would have been for
Oliver to ignore the troubling testimony and to refrain from calling further attention to it, Oliver was
obviously taken by surprise and was not ineffective for choosing the strategy he used. 

 Similarly, Oliver's failure to offer rebuttal evidence regarding appellant's income did
not render his assistance ineffective, as appellant contends. As he testified during the hearing on the
motion for new trial, Oliver's trial strategy was to defend appellant against the accusation that he had
given C.A.H. an enema. Whether appellant had the ability to financially support himself was not
part of that strategy. Moreover, appellant fails to explain how the admission of such evidence would
have affected the outcome of his trial. 

 Appellant claims that Oliver failed to request a proper limiting instruction and proper
jury charge regarding the extraneous-offense testimony, arguing that such a failure rendered his
counsel's assistance ineffective. See Tex. R. Evid. 105(a); George v. State, 890 S.W.2d 73, 76 (Tex.
Crim. App. 1994). While appellant may have been entitled to a limiting instruction, we cannot say
his counsel was deficient for not requesting one. See Parmer v. State, 38 S.W.3d 661, 671 (Tex.
App.--Austin 2000, pet. ref'd). At the new trial hearing, Oliver could not recall his strategy in
deciding not to ask for a limiting instruction, but the record does not reflect that Oliver had no
strategy at all. He could have chosen not to draw further attention to the extraneous offenses by not
requesting an instruction. See id. (quoting Ryan v. State, 937 S.W.2d 93, 104-05 (Tex.
App.--Beaumont 1996, pet. ref'd)). In any event, appellant provides no analysis as to how the
outcome of the trial would have been different had Oliver requested the limiting instruction. See id.

 Appellant also argues that Oliver failed to grasp the legal issues at trial. He bases this
argument on Oliver's testimony during the new trial hearing, in which he stated that the case was
about the practice of giving C.A.H. enemas. When put in context, however, it is clear that Oliver
was not attempting to define the offense that appellant was charged with when offering this
testimony. Rather, he was responding to an inquiry regarding why he had chosen not to offer rebuttal
evidence of appellant's income. 

 Appellant also argues that Oliver did not have a firm grasp of the law applicable to
motions in limine. Appellant fails to provide specific citations to the record in support of his
argument and fails to analyze how the outcome of the trial was affected. An independent review of
the record, however, arguably supports appellant's contention that on a few occasions Oliver
appeared confused when addressing legal issues before and during the trial. (8) Nevertheless, the
record also reveals that Oliver fashioned a plausible defense on behalf of the appellant within the
framework of the anticipated evidence, actively participated in the jury trial, cross-examined the
State's witnesses, presented defense witnesses, and made a jury argument. In hindsight, it may be
argued that Oliver could have adopted a different strategy in handling many of the objections during
trial. However, we may not judge trial counsel by hindsight. Appellant has failed to show that
Oliver's performance was deficient to the extent that he made such serious errors that he was not
functioning effectively as counsel. See Strickland, 466 U.S. at 690. Considering the facts of this
case, Oliver's defensive theory and strategy were reasonable. 

 Finally, appellant urges that his trial counsel conceded his guilt during closing
arguments when he stated, "I guess she's telling the truth," and, "Now, how are you gentlemen, how
are you going to defend yourself against that? You cannot. There is no defense. We have no
defense." He further maintains that the remarks were sexist. (9) During the hearing on the motion for
new trial, however, Oliver explained that his strategy was not to concede appellant's guilt, but rather
to propose to the jury that perhaps C.A.H. was telling the truth as she knew it, "as indoctrinated into
her by her stepmother [sic]." And with regard to the other comments, Oliver testified that he was
attempting to appeal to the male jurors in arguing that it is difficult to defend oneself against an
allegation of sexual misconduct by a young girl, especially when it is her word against his. Oliver's
comments do not reflect an unreasonable trial strategy. Furthermore, we are unconvinced that but
for these comments, there is a reasonable probability that the results of the trial would have been
different. Appellant's first issue is overruled. (10)


Extraneous Offense Evidence

 By his second issue, Rogers complains the district court erred in admitting extraneous
offense evidence--namely, the testimony by Jackson and Jeanine. A trial court is given wide
discretion to determine whether to admit or exclude evidence, and its decision will not be reversed
absent an abuse of that discretion. Montgomery v. State, 810 S.W.2d 372, 391 (Tex. Crim. App.
1990); Couchman v. State, 3 S.W.3d 155, 158 (Tex. App.--Fort Worth 1999, pet. ref'd). 

 Extraneous offenses are inadmissible to prove character conformity, but may be
admissible when the door is opened by direct defense testimony or to rebut a defensive theory. Tex.
R. Evid. 404(b); Creekmore, 860 S.W.2d at 892. "Where a false picture is presented by the defense,
the prosecution may impeach the defense witnesses' testimony by introduction of extraneous
offenses." Creekmore, 860 S.W.2d at 892.

 In the present case, appellant's defensive theory was that Ramos controlled C.A.H.
and encouraged her to make up the allegations against appellant. Appellant testified on his own
behalf and presented a picture of Ramos as a depraved, inebriated mother who often left sexually
explicit materials about the house in full view; appellant saw himself as a protector of the children,
trying to shield them from Ramos's deviant behavior. In addition, appellant presented several
witnesses who reiterated his assertions of Ramos's corruptible conduct. Appellant's two sons
testified that appellant was not a pedophile, had never been seen to act inappropriately around
C.A.H. or any of his other daughters or stepdaughters, and had always been regarded fondly by
C.A.H.

 By presenting this evidence and portraying himself and Ramos in this light, appellant
opened the door to the extraneous-offense evidence. First, by suggesting that Ramos directed C.A.H.
to fabricate the allegations against him, appellant invited testimony from Jeanine. Because Jeanine
was not related to Ramos and had not lived with her, and because she testified that appellant had
acted inappropriately with her, Jeanine's testimony rebutted appellant's implication that C.A.H.'s
accusations were a result of her mother's bidding. Similarly, by attacking Ramos's behavior around
the children and portraying himself as a protector, appellant subjected himself to controverting
evidence by Ramos. And finally, Jackson generally contradicted appellant's portrayal of himself as
the protector of the children. The State had the right to inquire about relevant extraneous offenses
to rebut the false impression presented to the jury by the appellant. We hold the district court's
ruling fell within a zone of reasonable disagreement, see Cantu, 842 S.W.2d at 682, and overrule
appellant's second issue.


Legal and Factual Sufficiency of Evidence

 By his third and fourth issues, appellant challenges the legal and factual sufficiency
of the evidence. To determine the legal sufficiency of the evidence to support a conviction, we view
all the evidence in the light most favorable to the verdict and ask if any rational trier of fact could
have found the essential elements of the offense beyond a reasonable doubt. See Jackson v. Virginia,
443 U.S. 307, 318-19 (1979); Griffin v. State, 614 S.W.2d 155, 158-59 (Tex. Crim. App. 1981). 
Review of a factual-sufficiency complaint requires us to consider all of the evidence without regard
to whether the evidence is favorable to either the State or the appellant. See Clewis v. State, 922
S.W.2d 126, 129 (Tex. Crim. App. 1996). We are to weigh the evidence equally, maintaining
appropriate deference to the jury's verdict. Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App.
1997). We may find the evidence factually insufficient only when the record clearly indicates that
the verdict is wrong and manifestly unjust. Id.; Clewis, 922 S.W.2d at 135. The standard of review
is the same for both direct- and circumstantial-evidence cases. King v. State, 895 S.W.2d 701, 703
(Tex. Crim. App. 1995). The State may prove its case by circumstantial evidence so long as it
proves all of the elements of the charged offense beyond a reasonable doubt. Easley v. State, 986
S.W.2d 264, 271 (Tex. App.--San Antonio 1998, no pet.) (citing Jackson, 443 U.S. at 319). 

 The jury is the exclusive judge of the facts to be proved, the weight to be given the
testimony, and the credibility of the witnesses. Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979);
Alvarado v. State, 912 S.W.2d 199, 207 (Tex. Crim. App. 1995). The jury may accept or reject any
or all of the evidence presented by either party. Saxton v. State, 804 S.W.2d 910, 914 (Tex. Crim.
App. 1991). The jury is free to draw reasonable inferences from basic facts to ultimate facts. Welch
v. State, 993 S.W.2d 690, 693 (Tex. App.--San Antonio 1999, no pet.). 

 A person commits the offense of indecency with a child if that person (1) knowingly
or intentionally, (2) engages in sexual contact, (3) with a child, (4) younger than seventeen years of
age, (5) who is not the spouse of the accused. Tex. Penal Code Ann. § 21.11(a)(1), (a)(2); Hill v.
State, 852 S.W.2d 769, 771 (Tex. App.--Fort Worth 1993, pet. ref'd). The Penal Code defines
"sexual contact" as "any touching of the anus, breast, or any part of the genitals of another person
with intent to arouse and gratify the sexual desire of any person." Tex. Penal Code Ann. § 21.01(2)
(West 1994). The culpable mental state for this offense is specific intent to arouse and gratify sexual
desire. Washington v. State, 930 S.W.2d 695, 698 (Tex. App.--El Paso 1996, no pet.). 

 Appellant argues that C.A.H. had "very vague memories of when the offense or
offenses were supposed to have occurred" and that her testimony "was so vague and inaccurate with
regard to timing and chronology as to be unbelievable." He further contends that C.A.H. did not
claim that he "had ever touched her vagina with his hands directly, nor had he used his penis to
assault her" and that there was no testimony that he "became aroused or gratified by any of the acts
[] alleged."

 The complainant testified that the events she described took place beginning in early
1991 and continued through mid-1993 or early 1994, while she and appellant were living in the same
house. C.A.H. also testified that appellant had fondled her breasts, had placed a vibrator on her
genitals, and had given her enemas. Finally, the jury heard evidence that appellant masturbated in
areas of the house where C.A.H. could easily see him and would often summon C.A.H. to his
bedroom while viewing pornographic movies. 

 We hold that this evidence is both legally and factually sufficient for the jury to
determine when the events occurred, whether appellant engaged in sexual contact with C.A.H., and
whether his intent was to arouse or gratify his sexual desire. See McKenzie v. State, 617 S.W.2d 211,
216 (Tex. Crim. App. 1981) (holding requisite specific intent to arouse or gratify sexual desire may
be inferred from defendant's conduct, remarks, and all surrounding circumstances). We overrule
appellant's third and fourth issues.




CONCLUSION

 Having overruled all of appellant's issues presented, we affirm the district court's
judgment.


 __________________________________________

 Lee Yeakel, Justice

Before Chief Justice Aboussie, Justices Yeakel and Patterson

Affirmed

Filed: June 29, 2001

Do Not Publish

1. Appellant and Ramos were involved in a relationship when appellant was a United States
serviceman and stationed in Ramos's native France. Jackson was conceived as a result of the
relationship. 
2. A Brady motion is a request that the State inform the defense of any exculpatory materials in
its possession. See Brady v. Maryland, 373 U.S. 83 (1963). 

3. Texas Rule of Evidence 404(b) provides:


 Evidence of other crimes, wrongs, or acts . . . may, however, be admissible for other
purposes [besides proving character] . . . provided that upon timely request by the
accused in a criminal case, reasonable notice is given in advance of trial of intent to
introduce in the State's case-in-chief such evidence other than that arising in the same
transaction.
4. The clerk's record does not include a motion in limine, and the docket sheet does not reflect
that one was filed. However, during the hearing on the motion for new trial, trial counsel testified
that he produced a motion in limine for the court and asked the court to make a pretrial ruling with
regard to the extraneous offenses. In addition, during the pretrial hearing, the district court
entertained arguments regarding whether the State would be allowed to comment on extraneous-offense evidence. The State agreed not to delve into extraneous-offense evidence, except for
evidence from the victim herself, without first approaching the bench and obtaining a ruling on
admissibility. And on at least one occasion during the trial, the State's attorney referred to a motion
in limine when addressing the court. Thus, the record does not affirmatively demonstrate this
alleged basis for the ineffective-assistance claim. See Thompson v. State, 9 S.W.3d 808, 814 (Tex.
Crim. App. 1999).
5. Once a court rules on a motion for discovery to request notice pursuant to Rule 404(b), the
notice requirements of the rule are triggered. Espinosa v. State, 853 S.W.2d 36, 39 n.4 (Tex. Crim.
App. 1993). 
6. Although the notice was filed on September 14, 1999, during the pretrial hearing, Oliver stated
that the State had given him the notice only a few moments before the hearing. He later admitted
that he had not yet read the notice thoroughly. Thus, it appears that if the State did indeed file its
notice on September 14, Oliver failed to examine it prior to the pretrial hearing. Nevertheless, Oliver
appears to have been familiar with the anticipated extraneous-offense evidence.
7. The reason for the two sons' absence during rebuttal is disputed. Appellant claims Oliver sent
Wallace to pick up an offense report and then sent Robert to look for Wallace when he failed to
return in time to testify on rebuttal. When neither son returned in time to testify, Oliver requested
a continuance until the witnesses could be located; the motion was denied. During the motion for
new trial hearing, Oliver denied having sent Wallace to retrieve an offense report. He stated that he
did not believe either son could have provided helpful testimony.
8. For example, before the State presented its rebuttal witnesses, the district court entertained
arguments from both parties regarding the admissibility of the witnesses' testimony and extraneous-offense evidence. Initially, the State intended to introduce sworn statements from Jeanine and
Jackson. The State argued that the statements were admissible to rebut the appellant's defensive
theory and to rebut character evidence. In response, Oliver focused his arguments on hearsay issues,
and stated that his concerns would be allayed if the State brought the witnesses in to testify in person
and subject themselves to cross-examination. The State readily agreed to Oliver's request. 
9. Oliver also stated, "It's hard for me to tell - when I heard that little girl up there testifying, it's
hard for me to tell - I'm a man. It's hard to tell when a woman is lying," and, "[I]t's hard for a
gentleman to tell when a woman is telling the truth."
10. Appellant also argues that the cumulative effect of his trial counsel's errors amounts to
ineffective assistance. When reviewing an ineffective-assistance-of-counsel claim, we review the
totality of the circumstances rather than isolated incidents and consider the cumulative effects
regardless of whether "cumulative effect" is asserted as a basis for the claim. See Wilkerson v. State,
726 S.W.2d 542, 548 (Tex. Crim. App. 1986).


 Not Publish

1. Appellant and Ramos were involved in a relationship when appellant was a United States
serviceman and stationed in Ramos's native France. Jackson was conceived as a result of the
relationship. 
2. A Brady motion is a request that the State inform the defense of any exculpatory materials in
its possession. See Brady v. Maryland, 373 U.S. 83 (1963). 

3. Texas Rule of Evidence 404(b) provides:


 Evidence of other crimes, wrongs, or acts . . . may, however, be admissible for other
purposes [besides proving character] . . . provided that upon timely request by the
accused in a criminal case, reasonable notice is given in advance of trial of intent to
introduce in the State's case-in-chief such evidence other than that arising in the same
transaction.
4. The clerk's record does not include a motion in limine, and the docket sheet